### TAYLOR v. UNITED STATES.

#### No. 10346.

Circuit Court of Appeals, Ninth Circuit.

April 26, 1944.

Rehearing Denied June 2, 1944.

Walter & Brown, of Oakland, Cal., for appellant.

Frank J. Hennessy, U. S. Atty, and Valentine C. Hammack, Asst. U. S. Atty., both of San Francisco, Cal., for appellee.

Before GARRECHT and HEALY, Circuit Judges, and McCORMICK, District Judge.

# 810

**McCORMICK, District Judge.**

Stanley Taylor appeals from a judgment of the District Court following his conviction by the jury on sixteen counts in an information containing twenty-one counts of alleged violations of Sections 4(a)[1] and 205(b)[2] of Public Law 421, 77th Congress, 56 Stat. 23, known also as the Emergency Price Control Act of 1942.

Appellant was sentenced to six months' imprisonment and fined in the aggregate sum of $950. The appellant will also be referred to in this opinion as the defendant.

Appellant's conviction was for specifically alleged violations of Maximum Rent Regulation Number 28,[3] issued pursuant to Section 2(b)[4] of the Emergency Price Control Act of 1942, 50 U.S.C.A.Appendix, § 902(b). This rent regulation became effective in the City and County of San Francisco on July 1, 1942, and pursuant to Section 1388.1804(a) of the regulation[5] the maximum rents for housing accommo-

---

[1] Section 4(a) of the Emergency Price Control Act, 50 U.S.C.A. Appendix 904 (a), as pertinent to this appeal, provides:

"It shall be unlawful, regardless of any contract, agreement, lease, or other obligation heretofore or hereafter entered into, for any person * * * to demand or receive any rent for any defense-area housing accommodations, or otherwise to do or omit to do any act, in violation of any regulation or order under section 2, * * * or to offer, solicit, attempt, or agree to do any of the foregoing."

[2] Section 205(b) of the Act, 50 U.S. C.A. Appendix 925(b), provides:

"Any person who willfully violates any provision of section 4 of this Act, and any person who makes any statement or entry false in any material respect in any document or report required to be kept or filed under section 2 or section 202, shall, upon conviction thereof, be subject to a fine of not more than $5,000, or to imprisonment for not more than two years in the case of a violation of section 4(c), and for not more than one year in all other cases, or to both such fine and imprisonment. Whenever the Administrator has reason to believe that any person is liable to punishment under this subsection, he may certify the facts to the Attorney General, who may, in his discretion, cause appropriate proceedings to be brought."

[3] 7 Fed.Reg. 4913.

[4] Section 2(b) of the Act, 50 U.S.C.A. Appendix, § 902(b), provides: "Whenever in the judgment of the Administrator such action is necessary or proper in order to effectuate the purposes of this Act, he shall issue a declaration setting forth the necessity for, and recommendations with reference to, the stabilization or reduction of rents for any defense-area housing accommodations within a particular defense-rental area. If within sixty days after the issuance of any such recommendations rents for any such accommodations within such de-

fense-rental area have not in the judgment of the Administrator been stabilized or reduced by State or local regulation, or otherwise, in accordance with the recommendations, the Administrator may by regulation or order establish such maximum rent or maximum rents for such accommodations as in his judgment will be generally fair and equitable and will effectuate the purposes of this Act. So far as practicable, in establishing any maximum rent for any defense-area housing accommodations, the Administrator shall ascertain and give due consideration to the rents prevailing for such accommodations, or comparable accommodations, on or about April 1, 1941 (or if, prior or subsequent to April 1, 1941, defense activities shall have resulted or threatened to result in increases in rents for housing accommodations in such area inconsistent with the purposes of this Act, then on or about a date (not earlier than April 1, 1940), which in the judgment of the Administrator, does not reflect such increases), and he shall make adjustments for such relevant factors as he may determine and deem to be of general applicability in respect of such accommodations, including increases or decreases in property taxes and other costs. In designating defense-rental areas, in prescribing regulations and orders establishing maximum rents for such accommodations, and in selecting persons to administer such regulations and orders, the Administrator shall, to such extent as he determines to be practicable, consider any recommendations which may be made by State and local officials concerned with housing or rental conditions in any defense-rental area."

[5] Section 1388.1804(a), Maximum Rent Regulation No. 28, is as follows:

"Maximum Rents. Maximum rents (unless and until changed by the Administrator as provided in Section 1388.-1805), shall be, (a) for housing accommodations rented on March 1, 1942, the rent for such accommodations on that date."

dations in San Francisco were "frozen" at the rent charged for such housing accommodations on March 1, 1942. The regulation provided, however, for another basic rental in certain established instances where there was a substantial change in the housing accommodations between March 1, 1942 and July 1, 1942, the effective date of the regulation. In other words, provision is made in situations where between March 1, 1942 and July 1, 1942, a housing accommodation was changed from unfurnished to fully furnished, or from fully furnished to unfurnished, or was "substantially changed * * * by a major capital improvement as distinguished from ordinary repair, replacement and maintenance" the maximum rent should then be the first rent for such accommodations after such change.[6]

Numerous errors are assigned by appellant. Grouped, they are: Insufficiency of the evidence, either factually or legally, to establish guilt or to support the verdict or judgment; denial by the court "to quash the proceedings;" refusal of the court to charge the jury in certain particulars requested; rulings upon testimony and evidence during the trial; prejudicial statements and conduct by the court and by the United States Attorney; failure of the court to inform defendant, who was not represented by counsel, of his legal rights; the verdict and judgment and all proceedings in the court below are violative of the Constitution of the United States and, particularly, of Amendment Five, and that Emergency Price Control Act of 1942 and Maximum Rent Regulation Number 28 issued thereunder are unconstitutional.

From the record before us it substantially appears that defendant and his wife during all applicable times were owners in joint tenancy of an apartment house at 530 Larkin Street, San Francisco, California. The property had been purchased August 16, 1941, having been for some time previous in the hands of a trustee in bankruptcy.

The defendant operated the apartment house, and since about September 1, 1941, Mrs. Evelyn Flynn has been throughout employed by the defendant as manager in charge of the apartment house on a salary.

In a document prepared by the defendant and submitted by him to the Office of Price Administration for official cognizance in connection with a hearing respecting violations of rent control regulations about November 2, 1942, which document without objection was received in evidence in the court below and which document is relied upon by both parties to this appeal, it appears that as compared to rents charged for fully furnished apartments in defendant's property on March 1, 1942 (the rent "freeze" date applicable), the tenants living in the same quarters alleged in the different counts of the information, to-wit, in October and November, 1942, were compelled by the defendant to pay charges for occupancy of their respective apartments ranging from $2 to $15 more monthly than the rentals established as of March 1, 1942. The increases so appearing amounted to a total differential of between $300 and $400 monthly over the rents for the respective apartments on the "freeze" date in the San Francisco Bay defense-rental area.

In each of the counts upon which the jury rendered the verdict against the defendant he was charged with unlawfully, knowingly and willfully demanding and receiving higher rents after the effective date of the regulations than the specifically alleged rents charged for the same apartments on March 1, 1942.

Appellant interposed in the District Court and now argues in this court upon the record before us two principal defenses: First, that between March 1, 1942 and July 1, 1942, the regulation's effective date, he had sold the furniture in the apartment house to his manager, Mrs. Flynn, and as a consequence there had been effected a change in the housing accommodations from fully furnished to unfurnished apartments. Thus the claim is made that appellant by his contractual arrangement with Mrs. Flynn was entitled under the regulation[7] to base its future rents upon the first rent charged after the Taylor-

---

[6] Section 1388.1804(d), Maximum Rent Regulation No. 28, the rent for

(3) "housing accommodations changed between those dates (March 1, 1942 to July 1, 1942) from unfurnished to fully furnished, or from fully furnished to unfurnished, or (4) housing accommodations substantially changed between those dates by a major capital improvement as distinguished from ordinary repair, replacement and maintenance, (shall be) the first rent for such accommodations after such construction or change, * * *."

[7] See footnote 6 ante.

Flynn deal from fully furnished housing accommodations to unfurnished ones. Appellant also and secondly contends that between March 1, 1942 and July 1, 1942, he had made major capital improvements to the respective housing accommodations in the Larkin Street property, i.e., a complete rehabilitation of the apartments specified in the respective counts of the information as distinguished from ordinary repairs, replacements and maintenance and was therefore entitled to invoke Section 1388.1804 (d) of Regulation 28. Neither contention under the record before us has any merit.

In relation to the asserted sale of the furniture to appellant's manager the record shows that prior to the establishment of rent control in the San Francisco Area Taylor was apprised by representatives of the Price Administration at a meeting of landlords and was fully aware at that time that rent control was presently to be governmentally applied in the San Francisco Bay Area. On June 6, 1942, he and Mrs. Flynn entered into a written "Agreement of Sale" wherein it was stated that Taylor sold the furniture and furnishings in the apartment house to Mrs. Flynn for $15,000, with a down payment of $1, and in which it was further provided that the purchase price which was to be turned over to the defendant should consist solely of charges to be thenceforth imposed upon tenants of the apartments for the use of the furniture and furnishings during their occupancy of apartments. By this agreement the utilization of the furniture and furnishings by Mrs. Flynn for any purpose was restricted to the Larkin Street apartment house of defendant. None of the furniture or furnishings was moved from the premises and the physical aspects in the apartment house remained unchanged after execution of the sale agreement.

Moreover, provisions were inserted in the June 6, 1942 agreement by a supplementary document dated July 31, 1942, forbidding the removal of furniture from the Larkin Street premises until such time as the purchase price was fully paid, and it was also provided that the agreement could not be assigned without first obtaining the consent of Taylor. The supplementary instrument also contained this illuminating and significant paragraph: "It is further agreed that if due to governmental inter-ference or for any other cause the purchaser (Evelyn Flynn) finds it impossible to carry out the terms of the purchase, that the return of the furniture and furnishings then in her legal possession to the sellers thereof, shall constitute full payment of any claim against her by the sellers on account of contract of sale of June 6, 1942, or as amended."

It thus appears that the transaction between defendant and Mrs. Flynn reflected by the two instruments of agreements originating as the record shows it did in an environment of opposition and resistance by the defendant to oncoming rent control in San Francisco, is more in the nature of a contrivance to circumvent the operation of the Emergency Price Control Act in the Larkin Street apartment house than of a forthright sale of the furniture and furnishings in such property.

It is conceded that the only monies paid on the furniture transaction consisted of those amounts assessed individual tenants for the use of the furniture and furnishings and included within their increased charges for the occupancy of their apartments.

Subsequent to the effective date of the regulations each of appellant's tenants received statements and receipts[8] setting forth each factor of the tenant's increased cost for the occupancy of the apartment. Such items, previously included and absorbed in the rent charged for the apartments, but after July 1, 1942, specified in the statements and receipts given to tenants, included water, gas, electricity, use of furnishings, insurance and inspection of furnishings, cleaning, administration and maintenance, and the "basic rent" for the apartment. Upon such statements and receipts delivered to tenants there appeared the cautionary statement: "Remember this when checking your O.P.A. registration blank."

Maximum Rent Regulation Number 28, Section 1388.1813, paragraph (6) defines the term "housing accommodations" as follows: "The term 'housing accommodations' means any building, structure, or part thereof, or land appurtenant thereto, or any other real or personal property rented or offered for rent for living or dwelling purposes, together with all privileges, services, furnishings, furniture, equipment, fa-

---

8 Defendant's Exhibits "B" and "C" on pp. 52–54, Transcript of Record, are samples of such instruments.

cilities and improvements connected with the use or occupancy of such property."[9]

The term "rent" is defined in paragraph 10 of the Section as "* * * The consideration, including any bonus, benefit, or gratuity demanded or received for the use or occupancy of housing accommodations, * * *."[10]

To prevent the practices pursued by appellant as shown by the record before us, Section 1388.1809 of Rent Regulation Number 28, entitled "Evasion," provides:[11] "The maximum rents and other requirements provided in this Maximum Rent Regulation shall not be evaded either directly or indirectly, in connection with the renting or leasing or the transfer of a lease of housing accommodations, by way of absolute or conditional sale, sale with purchase money or other form of mortgage, or sale with option to repurchase, or by modification of the practices relating to payment of commissions or other charges, or by modification of the services furnished with housing accommodations or otherwise."

The claim that the furniture deal between the defendant and Mrs. Flynn transformed the housing accommodations involved in this appeal from furnished to unfurnished facilities is illusory.

There was no detachment or separation in any way of the furniture or furnishings from the respective apartments by the sale agreement. As far as the appointments in the housing units were concerned, with the exception of the availability for temporary use of an electric washer (and that always revocable at the option of the house management), the situation respecting the tenant was practically identical at all times from March 1, 1942, to the applicable dates in October and November, 1942, when the information charges the violations of the Regulations to have occurred.

The only result of the furniture arrangement effectual upon the tenant was to increase his rentals contrary to the Emergency Price Control Act and Regulations promulgated thereunder.

Illustrative of the untenable contention argued by appellant that changes warranting his invocation of the exceptions provided for in Section 1388.1804(d), (3) and (4) of Regulation Number 28 in the imposition of charges for housing accommodations in the apartment house here involved, is the established situation shown by the testimony of tenants of Apartment 203, the subject of the sixth count of the information. The evidence established that nothing but four pictures were added to the apartment from March 1, 1942, to a short time before the trial in the court below, which occurred January 6, 1943, yet in that interim the rent of such apartment had been successively increased from $37.50 per month to $50 per month.

■ The only evidence of any substantial change in the apartment house during the periods involved in the information was the addition about June 27, 1942, of a Bendix washing machine for the general use of the apartment house tenants. The installation of this standard brand appliance necessitated an additional plumbing connection and an electrical outlet contacting the wiring system which was already in the premises.

In view of the Regulations to which we have adverted earlier in this opinion and of the only interpretation of the Office of Price Administration that has any relevancy here, namely, Interpretation 5(a) (1)-I,[12] it would, we think, be repugnant

---

[9] See, also, definition of term "housing accommodations" in subsection (f), Section 302 of Emergency Price Control Act of 1942, Title 50 Appendix, Section 942(f), U.S.C.A.

[10] See, also, definition of term "Rent" in Emergency Price Control Act of 1942, Title 50 Appendix, Section 942(g), U.S. C.A.

[11] 7 Fed.Reg. 4916.

[12] Interpretation 5(a) (1)-I. O.P.A. Service Vol. 10, pp. 200, 1481. "A 'major capital improvement' consists of a substantial change in the housing accommodations such as would materially increase the rental value in a normal market where free bargaining prevailed unaffected by a shortage in housing accommodations. It must be different from ordinary repair, replacement and maintenance. A major capital improvement falls into one of three categories:

"(1) A structural addition,
"(2) A structural betterment,
"(3) A complete rehabilitation.
"(1) Structural Addition.

"A structural addition is a clear addition to the housing accommodations, such as the construction of an additional room or a new porch or the installation of plumbing, heating or electricity where such facilities did not previously exist. The addition need not necessarily be a part of the structure, but might also include a new garage or the installation of sidewalks. If the improvement has

to the purposes of the Emergency Price Control Act, to conclude that the addition and installation of one electric washing machine, costing $300, in a large apartment house of forty-eight apartments, constitutes a major capital improvement to such housing facilities, particularly to the extent of increasing the total apartment house rentals between $300 and $400 monthly, and increasing the rent for an apartment $12.50 per month, as was done in one instance, at least.

Error is assigned in a ruling of the trial court which denied the defendant's motion to "quash the proceedings."

The record does not show upon what ground the motion was made in the District Court, but appellant now argues in the briefs an asserted failure to allege jurisdictional facts in the information.

It is contended that the information was fatally defective in that there is no allegation therein that the housing accommodations had not been changed from furnished to unfurnished facilities, and also by major capital improvements pursuant to Section 1388.1804(d) (3) and (d) (4), respectively, of Regulation Number 28, and, further, that the information was basically insufficient in failing to contain allegations that the Administrator had made an order fixing the maximum rents by a determination pursuant to Section 1388.1805(d) of Regulation 28, or that the Administrator had mailed a warning notice as required by Section 205(f) (2) of the Act, 50 U.S.C.A. Appendix, § 925(f) (2). We find no merit in any of these contentions.

■ The information charged the defendant with offenses substantially in the language of the Emergency Price Control Act of 1942, and the applicable Regulation promulgated pursuant to said Act. The defendant was thereby properly and sufficiently apprised of the nature and elements of the offenses of which he was accused and of the subject matter of the prosecution against him adequately to enable him to make his defense and to plead the judgment in bar of any future prosecution for the same offense. It was not a burden of the Government to negative in the information exceptions which might exculpate the accused from liability under the Act.[13]

■ We think the information was not defective in failing to allege that the Administrator had entered an order fixing the maximum rent after a determination of such fact in compliance with Section 1388.-1805(d), Maximum Rent Regulation Number 28.[14] This sub-section of the Regulation has no relevancy to the instant cause. The section merely states what may be done in those instances wherein a dispute arises between the landlord and tenant, or where there is doubt as to the actual rentals that should be charged for occupancy of the accommodations. Here there was no contention that there was any dispute between Taylor and his tenants relating to rents and whatever doubts may have arisen in the defendant's mind respecting rents that should have been charged for the apartments were, we think, effectually answered by the regulations. Under the record before us it was not necessary to allege in the Information compliance with Section 1388.1805(d), Regulation Number 28.

■■ We are also of the opinion that the failure to allege that the Administra-

---

resulted in some added feature which did not exist prior to the change of a kind which would normally result in an increase in the rental value, then it would be a substantial change by a major capital improvement."

[13] McKelvey et al. v. United States, 260 U.S. 353, 43 S.Ct. 132, 67 L.Ed. 301, affirming 9 Cir., 273 F. 410; Wheeler v. United States, 5 Cir., 80 F.2d 678; Queen v. United States, 77 F.2d 780, 64 App.D.C. 301, certiorari denied, 295 U. S. 755, 55 S.Ct. 917, 79 L.Ed. 1698; Green, Moore & Co., Inc., et al. v. United States, 5 Cir., 19 F.2d 130, certiorari denied 275 U.S. 549, 48 S.Ct. 86, 72 L. Ed. 420.

[14] Section 1388.1805(d), Maximum Rent Regulation Number 28, provides:

"(d) If the rent on any date determining the maximum rent, or any other fact necessary to the determination of the maximum rent, is in dispute between the landlord and the tenant, or is in doubt, or is not known, the Administrator on petition of the landlord filed within 30 days after the effective date of this Maximum Rent Regulation, or at any time on his own initiative, may enter an order fixing the maximum rent by determining such fact; or if the Administrator is unable to ascertain such fact he shall enter the order on the basis of the rent which he finds was generally prevailing in the Defense-Rental Area for comparable housing accommodations on March 1, 1942."

tor had sent appellant a warning notice as required by Section 205(f) (2) of the Act, 50 U.S.C.A.Appendix, § 925(f) (2), is not material to this proceeding. Section 205 contains enforcement provisions of the Emergency Price Control Act. Subsection (a) provides for injunctive relief; (b) makes provision for criminal prosecutions and fixes penalties; (c) indicates places of trials of applicable proceedings; (d) authorizes intervention of Administrator in certain instances; (e) relates to civil remedies in the form of actions to recover $50 or treble the amount by which the consideration exceeds the lawful maximum price, and (f) (2), the subsection invoked by defendant in attacking the sufficiency of the information, makes provision for the suspension of licenses issued under subsection (f) (1) thereof. It is clear from a reading of Section 205(f) (2) that such a warning notice is a condition precedent solely to proceedings of civil or equitable cognizance for suspension of the issued license and has no application to criminal proceedings such as those before us in this appeal charging violations of other features of the Act or Regulation. This, we think, is also made manifest by the last sentence in Subsection (f) (2) of Section 205.[15]

Appellant assigns as additional errors the trial court's rulings in limiting appellant's examination of certain witnesses and the trial court's action in overruling appellant's objections to the testimony of various Government witnesses.

■ We think it unnecessary to elaborate on each of these assignments. An examination of the entire record discloses that the trial court, regardful of defendant's insistence upon trying the case himself without counsel, granted appellant an unusually wide latitude in his presentation of evidence and in the conduct of his defense to the charges before the court and jury. Throughout the trial appellant introduced numerous documents, statements, letters, notices and transcripts, many of which related to various controversies he had had with the Office of Price Administration. The record reveals that where the trial court did sustain or overrule an objection made by either the defendant or the Government it was done because the matter had been previously answered by an exhibit or by the testimony of other witnesses, or where the inquires related to irrelevant matters, self-serving declarations, and matters calling for opinions and conclusions which should have been excluded and were properly excluded by the court below. We have considered each of appellant's assignments of error relating to the examination of witnesses during the trial and to the production of evidence in the court below, and we find no error in any ruling of the court in such matters.

Appellant argues that the District Judge erred in permitting the United States Attorney to ask leading and argumentative questions of a witness Van Dahlen concerning the rents charged by the defendant for the occupancy of Apartment 209; that prejudicial statements were made by the court, by the United States Attorney, and by a witness Del Carlo. It is also claimed that the defendant was prejudiced by improper argument by the United States Attorney before the jury and by the failure of the court to properly preserve in the record such asserted errors or "to inform defendant of his legal rights and of the method of preserving these errors."

■ It is clear from an examination of Government's Exhibit 1, the accuracy of which appellant does not dispute, that the witness Van Dahlen could not precisely recall the actual rents paid by him to appellant, and the questions put to Van Dahlen in this connection were asked for the purpose of refreshing his recollection and were proper and harmless to the defendant, the record showing that the proper amounts were already in evidence without objection in Government's Exhibit 1.

Appellant has failed to designate or point out wherein or whereby he was, as he states, "highly prejudiced by proceedings in open court preliminary to trial," and the record also fails to disclose any "inflammatory and improper argument of the case by the United States Attorney before the jury." Appellant stresses the point that the trial judge should have preserved these matters in the record or should have informed the appellant of the method of preserving them.

■ The defendant, however, chose not to be represented at the trial of the

---

[15] "No proceedings for suspension of a license, and no such suspension, shall confer any immunity from any other provision of this Act."

See, also, United States v. Ganz et al., D.C.Mass., 48 F.Supp. 323.

case by counsel. On the contrary, defendant at the call of the case for trial in the court below consented to the withdrawal of his attorneys and elected to proceed in his own behalf. As we have previously stated, the entire record before us reflects an exceptionally wide latitude on the part of the trial judge in permitting the defendant to present matters which, under other circumstances, would properly have been excluded. The record shows that the court was also solicitous to protect the defendant's rights throughout the trial. Certainly beyond this the court is not required to go, and we are not now willing to assume without any record basis that the experienced trial judge permitted prejudicial conduct on the part of the Government's counsel.

Appellant specifically complains of the trial court's action in permitting the trial to proceed on the morning of the third day of the trial with eleven jurors without first informing appellant that unless he so consented the proceedings necessarily would be declared a mistrial and the case retried. It appears that upon the court's reconvening after an overnight recess one of the jurors was absent and missing. After waiting unsuccessfully for this juror for fifteen minutes the procedure now complained of took place.

■■■■■■ A defendant in a criminal case in the federal court may waive trial by a jury of twelve and consent to a trial by any lesser number, or by the court without a jury.[16] Before the waiver can become effective, however, not only must the intelligent consent of the accused be given but the consent of Government counsel must also be had, and the sanction and approval of the court to such procedure must follow. The record discloses that the trial judge not only obtained the stipulation of Government counsel to proceed with eleven remaining jurors but also received the consent and expressed approval of appellant to such course before sanctioning the procedure. Although the right of an accused to a trial by a constitutional jury must be

jealously safeguarded by the court throughout, we find that the defendant intelligently and freely consented to the trial's continuing to termination by less than twelve jurors and we therefore find no error in failure of the trial judge to inform the defendant of the eventuality of a mistrial unless he elected to proceed with the trial by the eleven jurors.

A further claim of the appellant is that the "proceedings in this case are in violation of the Constitution of the United States of America and particularly in violation of Article Five of the Amendments (sic) thereto, which provides that 'no person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury.'"

The information upon which appellant was brought to trial charged him with violations of Sections 4(a) and 205(b) of the Emergency Price Control Act of 1942, 50 U.S.C.A.Appendix, §§ 904(a) and 925(b).

By Section 205(b) of the Act the punishment for a violation of Section 4(a) is limited to a fine of not more than $5,000, or to imprisonment for not more than one year, or to both such fine and imprisonment.

■■■■ Title 18 U.S.C.A. § 541 provides that "All offenses which may be punished by death or imprisonment for a term exceeding one year shall be deemed felonies. All other offenses shall be deemed misdemeanors." Thus appellant was charged solely with misdemeanors. And it is well settled that a prosecution for misdemeanors, such as those under consideration in this appeal, involving no infamous crime or no infamous punishment, may be by information.[17]

■■■■ Error is assigned to the district court's action in instructing the jury that Regulation Number 28, section 1388.1804 provides in part that for housing accommodations in the San Francisco Bay Area rented on March 1, 1942, the maximum rent after July 1, 1942, shall be the rent charged for the same accommodations on March 1,

16 Patton v. United States, 281 U.S. 276, 50 S.Ct. 253. 74 L.Ed. 854, 70 A.L. R. 263; Brown v. Zerbst, Warden, 5 Cir., 99 F.2d 745; Ferracane et al. v. United States, 7 Cir., 47 F.2d 677.

17 Duke v. United States, 301 U.S. 492, 57 S.Ct. 835, 81 L.Ed. 1243; Blanc v. United States, 9 Cir., 258 F. 921; Cat-

lette v. United States, 4 Cir., 132 F. 2d 902; Thorm et al. v. United States, 3 Cir., 59 F.2d 419, certiorari denied 287 U.S. 624, 53 S.Ct. 78, 77 L.Ed. 541; Falconi et al. v. United States, 6 Cir., 280 F. 766; Hunter v. United States, 4 Cir., 272 F. 235, certiorari denied, 257 U. S. 633, 42 S.Ct. 47, 66 L.Ed. 407.

1942, without including the exceptions (d) (3) and (d) (4) to that rule that are contained in the same section of the regulation and upon which appellant relied. The record discloses, however, that not only did the court read to the jury in its instructions the text of Section 1388.1804(d) (3) and (d) (4) upon which appellant relied, but later in its charge accurately summarized the provisions of these two subsections for the jury's benefit. In this respect appellant apparently claims error in the trial court's alleged failure to make clear what was meant by the phrase "charged between these dates" with reference to March 1, 1942 and July 1, 1942. However, the record clearly reveals that the court did instruct the jury that the former constituted the "maximum rent date," while the latter was the effective date of the regulation. We see no merit to this argument.

■ Additional error is assigned to the court's refusal to give as a portion of its instructions Section 1388.1805(d) of Maximum Rent Regulation Number 28. For the reasons previously stated by us in connection with appellant's assignment of error respecting the Government's failure to plead this subdivision in the allegations of the Information, we believe the trial court properly refused to charge the jury with this provision.

■ Apropos to the instructions of the court to the jury we have considered all exceptions to the instructions and all applicable assignments of error and, considered as a whole, we think the instructions properly and sufficiently submitted the cause to the jury for its ultimate determination.[18] Beyond this the court is not required to go.

Finally, appellant contends that the Emergency Price Control Act of 1942 and Maximum Rent Regulation Number 28 issued thereunder are unconstitutional.

■ It is claimed that the questioned statute is an unconstitutional delegation of the legislative authority of Congress to an administrative agency; that the Act constitutes a taking of property without due process of law in contravention of the Fifth Amendment; that the Act and Regulation are each invalid for lack of specific detail, and that Rent Regulation Number 28 is not a valid enactment.

■ The constitutional basis of the Emergency Price Control Act of 1942 and Maximum Rent Regulation Number 28, "born of the exigencies of war,"[19] has been the subject of extensive and comprehensive litigation. The objections raised by appellant to this Act have been recently answered directly or in substance and adversely to appellant's contentions by the United States Supreme Court in Chester Bowles, as Administrator, etc. v. Mrs. Kate C. Willingham et al., 64 S.Ct. 641, and in Yakus, Petitioner, v. United States, and Rottenberg et al., Petitioners, v. United States, 64 S.Ct. 660. There can be no longer any question as to the constitutional validity of either the Act or of any Regulation under attack in this appeal.[20] Moreover, it should be noted that we are without jurisdiction to pass upon the validity of Rent Regulation Number 28 in view of the provisions of Section 204 of the Act, 50 U.S.C.A.Appendix, § 924.[21]

---

[18] Hargreaves v. United States, 9 Cir., 75 F.2d 68, certiorari denied 295 U.S. 759, 55 S.Ct. 920, 79 L.Ed. 1701; Johnson v. United States, 9 Cir., 59 F.2d 42, certiorari denied 287 U.S. 631, 53 S. Ct. 83, 77 L.Ed. 547; Graham v. United States, 10 Cir., 120 F.2d 543.

[19] Scripps-Howard Radio, Inc., v. Federal Communications Com., 316 U.S. 4, 17, 62 S.Ct. 875, 86 L.Ed. 1229.

[20] See, also, Taylor v. Brown, Em.App., 137 F.2d 654; Wilson et al. v. Brown, Adm'r, Em.App., 137 F.2d 348; Rottenberg et al. v. United States, 1 Cir., 137 F.2d 850; Brown, Adm'r, v. Wright, 4 Cir., 137 F.2d 484; Henderson v. Kimmel, D.C., 47 F.Supp. 635.

[21] Section 204(d), 50 U.S.C.A.Appendix, § 924(d), provides in part: " * * *

The Emergency Court of Appeals and the Supreme Court upon review of judgments and orders of the Emergency Court of Appeals, shall have exclusive jurisdiction to determine the validity of any regulation or order issued under Section 2, of any price schedule effective in accordance with the provisions of Section 206, and of any provision of any such regulation, order, or price schedule. Except as provided in this section, no court, Federal, State or Territorial, shall have jurisdiction or power to consider the validity of any such regulation, order or price schedule, or to stay, restrain, enjoin, or set aside, in whole or in part, any provision of this Act authorizing the issuance of such regulations or orders, or making effective any such price schedule, or any provision of any

An examination of the entire record reveals sufficient evidence to support the verdict of the jury and, finding no reversible error, the judgment is affirmed.

such regulation, order, or price schedule, or to restrain or enjoin the enforcement of any such provision."

See, also, Bowles, Adm'r, v. Willing-

ham et al., supra; Yakus, Petitioner, v. United States, supra, and Rottenberg et al., Petitioners, v. United States, supra.