**ROSENSWEIG et al. v. UNITED STATES.**

No. 10540.

Circuit Court of Appeals, Ninth Circuit.

June 30, 1944.

Concurring Opinion Filed July 19, 1944.

Rehearing Denied Aug. 2, 1944.

Writ of Certiorari Denied Nov. 6, 1944.

See 65 S.Ct. 117.

John W. Preston and Samuel Mirman, both of Los Angeles, Cal., for appellants.

Charles H. Carr, U. S. Atty., and James M. Carter and Ray H. Kinnison, Asst. U. S. Attys., all of Los Angeles, Cal., for appellee.

Before DENMAN, MATHEWS, and HEALY, Circuit Judges.

DENMAN, Circuit Judge.

Appellants having pleaded guilty to two counts of an information charging "black market" sales of beef in violation of the Emergency Price Control Act of 1942, 50 U.S.C.A.Appendix, § 901 et seq., hereinafter called the Act, each appeals from the consequent judgments. The grounds of appeal are (a) the failure of each of the counts to charge facts sufficient to constitute a public offense against the laws of the United States and (b) the denial by the district court of a motion to set aside the judgments and pleas of guilty. Other claimed grounds of appeal involving the constitutionality of the Act were abandoned.

The two counts of the information are as follows:

"Count One

"That on or about the 7th day of May, 1943, in the City of Long Beach, County of Los Angeles, State of California, in the district aforesaid, and in the Central Division thereof and within the jurisdiction of this Court, Aron Rosensweig, and Abe Rosensweig, doing business as the Central Packing Company, did knowingly, wilfully and unlawfully offer for sale, sell and deliver to E. E. Surhart at 501 Daisy Avenue, Long Beach, California, one side of U. S. Grade A beef weighing 296 pounds for the sum of $88.91, which said side of U. S. Grade A beef weighing 296 pounds had a maximum price of $68.18 under the provisions of Revised Maximum Price Regulation 169 (7 Fed. Reg. 10381) as amended, issued by Leon Henderson as Administrator of the Office of Price Administration, pursuant to Section 2 of the Emergency Price Control Act of 1942; contrary to the form and effect of the statute in such case made and provided and against the peace and dignity of the United States of America (Emergency Price Control Act of 1942, Pub.L. 421, 77th Cong. 2d Sess., 56 Stat. 23, January 30, 1942)."

"Count Three

"That on or about April 15, 1943, in the City of Long Beach, County of Los Angeles, State of California, in the District aforesaid and in the Central Division thereof, and within the jurisdiction of this Court, Aron Rosensweig and Abe Rosensweig, doing business as Central Packing Company, hereinafter called 'the defendants,' did make a sale of certain meat products to E. E. Surhart; that said defendants did knowingly, wilfully and unlawfully give a false invoice covering said sale of said meat products, in that said defendants did give an invoice covering said sale on Central Packing Company invoice No. 9373, dated April 15, 1943, showing the total price charged and received for the meat products listed on said invoice No. 9373 to be $164.71, whereas in truth and in fact, as the defendants then and there well knew, the total price charged and received for the meat items shown in invoice No. 9373 was $189.46, in violation of Revised Maximum Price Regulation No. 169 (7 Fed. Reg. 10381) as amended, issued by Leon Henderson as Administrator of the Office of Price Administration, pursuant to Section 2 of the Emergency Price Control Act of 1942, and in violation of Revised Maximum Price Regulation No. 148 (7 Fed. Reg. 8609) as amended, issued by Leon Henderson as Administrator of the Office of Price Administration, pursuant to Section 2 of the Emergency Price Control Act of 1942 (Emergency Price Control Act of 1942, Pub.L. 421, 77th Cong. 2d Sess., 56 Stat. 23, January 30, 1942); contrary to the form of the statute in such case

made and provided and against the peace and dignity of the United States."

On Count One, Aron Rosensweig was sentenced to imprisonment for a period of thirty days in a jail and to pay a fine of $1,000. On Count Three, it was ordered that the imposition of sentence be suspended for two years and that the defendant be placed on probation for such period of two years, commencing at the expiration of the sentence on Count One, and on condition that he would not continue his black marketing.

Abe Rosensweig was sentenced on Count One to pay a fine of $1,000. On Count Three there was a similar order suspending sentence and placing the defendant on probation for a period of two years.

■ A. Both appellants contend that Count One fails to state an offense because "one side of U. S. Grade A beef" is an agricultural commodity and not a processed product; and that the regulation of the price Administrator had not had the approval of the Secretary of Agriculture as required in Section 3(e) of the Act[1] for regulation of the price of agricultural commodities, and hence that Price Regulation 169 which they are charged with violating, never became effective.

Appellants base their claim that a side of beef is an agricultural commodity and not a processed product on a regulation of the Price Administrator which, it is claimed, placed a side of beef within the class of agricultural commodities and not in the class of processed products,[2] the Price Administrator being empowered by Section 2(c) of the Act to make by regulation a classification and differentiation between the two groups.[3]

---

[1] "(e) Notwithstanding any other provision of this or any other law, no action shall be taken under this Act by the Administrator or any other person with respect to any agricultural commodity without the prior approval of the Secretary of Agriculture; except that the Administrator may take such action as may be necessary under section 202 and section 205(a) and (b) to enforce compliance with any regulation, order, price schedule or other requirement with respect to an agricultural commodity which has been previously approved by the Secretary of Agriculture."

[2] The definition of "Beef carcass" in Section 1364.455(a) (8) of Revised Maximum Price Regulation No. 169 is as follows:

" 'Beef carcass' means and is limited to the dressed carcass, side, or sides of beef, which shall be dressed with the 1st and 2nd tail (caudal) vertebrae, kidney knob or knobs and hanging tender left on. The beef carcass shall not be broken in any other manner than provided in paragraph (a) (9) of this sec. 1364.455."

Paragraph (a) (9), referred to in Section 1364.455 (a) (8), defines "Beef wholesale cut" as follows:

" 'Beef wholesale cut' means and is limited to any of the following cuts meeting the following minimum specifications, derived from the beef carcass, but excluding the offal and any item not included herein. (All measurements prescribed herein shall be made with a rigid straight ruler. All cuts shall be made according to the definite guides and measurements specified. Ribs are designated as 1st to 13th, inclusive, counting as the 1st rib that one which is nearest the neck end of the side.)"

And the definition of "Processed products" in Section 1364.477 (3) of Revised Maximum Price Regulation No. 169, is as follows:

"Sec. 1364.477. Definitions applicable to processed products. (a) When used in this Revised Maximum Price Regulation No. 169 and when applicable to processed products the term: * * *

"(3) 'Processed Products' means ground, cured, pickled, spiced, smoked, dried or otherwise processed beef and/or veal, including ground hamburger and sausage containing any proportion of beef or veal: Provided, That any beef carcass, or cut thereof, including any beef wholesale cut which has been boned as permitted in subpart B of this Revised Regulation or otherwise, or any veal carcass, or cut thereof, including any veal wholesale cut which has been boned as permitted in subpart C of this Revised Regulation or otherwise shall not be deemed a processed product, Products of each grade and brand, and in each stage of processing, shall be considered separate processed products. Each type of canned and packaged meat, made entirely from beef and/or veal shall be considered a separate processed product. Kosher processed products shall for the purposes of Sec. 1364.476 be regarded as separate processed products."

The argument apparently is that since under the last proviso a beef carcass or cut thereof which has been boned shall not be deemed a processed product, the carcass or side of the carcass without boning must be deemed not a processed product, and hence an agricultural commodity.

[3] "(c) Any regulation or order under this section may be established in such form and manner, may contain such classifica-

It is not questioned that if a side of beef is a processed product, Regulation 169, admitted to have been violated, is valid without the approval of the Secretary of Agriculture.

Revised Maximum Price Regulation 169 provides,

"§ 1364.401 *Prohibition against selling beef and veal carcasses and wholesale cuts, and processed products at prices above the maximum—(a) Beef carcasses and wholesale cuts.* On and after December 16, 1942, regardless of any contract, agreement, or other obligation no person shall sell or deliver any beef carcass or beef wholesale cut, and no person shall buy or receive any beef carcass or beef wholesale cut at a price higher than the maximum price permitted by § 1364.451; and no person shall agree, offer, solicit or attempt to do any of the foregoing * * *."

The pleas of guilty admit the sale above the maximum price set by § 1364.451.

There is nothing on the face of the Regulation to indicate that the Secretary of Agriculture has not approved it, and there is no requirement that it appear on the face of the Regulation that such approval has been had. It may or may not have been approved, but that is not here pertinent for we are of the opinion that appellants' claim that the Regulation did not become enforcible is no more than a claim that the Regulation is invalid.

Appellants do not claim that they have at any time invoked the jurisdiction of the Emergency Court of Appeals provided in Section 204(c) and (d) of the Act, or that that court has held the Regulation to be invalid in any previous proceeding whatever. The district court and this circuit court of appeals have no jurisdiction to consider the contention that the Regulation is invalid. Yakus v. United States, 64 S.Ct. 660.

█ With regard to the sentences on Count Three, appellants are of the erroneous impression that the order subjecting them to probation is not an appealable order. The contrary was held in Korematsu v. United States, 319 U.S. 432, 63 S.Ct. 1124, 87 L.Ed. 1497, and the same claim that the count fails to state an offense is before us. It is disposed of by the determination above made of our lack of jurisdiction to consider a claim of the Regulation's invalidity.

B. After the sentences were imposed, appellants moved that they be set aside and that appellants be permitted to withdraw their pleas of "guilty" and substitute pleas of "not guilty." This was based upon a claim "of the promises made to the appellant[s] by the Assistant United States District Attorney that the Probation Officer, if appellant[s] would plead guilty to two counts, would recommend to the Judge of said Court that a fine of not to exceed One Hundred Twenty-five ($125.00) Dollars on each Count of the Information so plead to by appellant[s], would be imposed."

Because of such alleged promises it is contended that the court abused its discretion in refusing to vacate the sentences and permit the withdrawal of the pleas of guilty.

█ The appellants claimed before the district court that there was a "liaison" between the district attorney and the court, that is, in effect, that the government has a relationship to the court different from and more intimate in character than that of the accused defendants. It is not necessary for us to stress the lack of warrant for any such an assertion.

Evidence was taken at the hearing on the motions and it appeared that the attorney for the United States denied that he had made any such promises and it was admitted by the appellants that in the conversation regarding possible light sentences if guilt was admitted, none had been given. There was testimony to the effect that before the pleas of guilty were entered the report of the Probation Officer's recommendations were read to the attorney for appellants. The summary of the report is

"Summary:

"Investigation has shown that Aron Rosensweig and Abe Rosensweig were violating price ceiling according to a well-planned scheme. Their invoices of maximum prices and checks received from buyers show similar amounts. However, they accepted further cash payment on the side. OPA investigation indicates that thousands of dollars overcharge was probably made by this method.

tions and differentiations, and may provide for such adjustments and reasonable exceptions, as in the judgment of the Administrator are necessary or proper in order to effectuate the purposes of this Act. * * *"

34

"Recommendation:

"Because of the clear past record of these defendants, penitentiary sentence is not recommended. It is recommended that they be given a heavy fine and placed on probation."

Obviously, the court could have imposed a term in the penitentiary in view of the statement concerning the repeated black marketing activities. There could be no element of surprise at such a light sentence as a mere one month in jail.

The appellants do not deny the statement of the Probation Officer's report of such repeated black marketing; nor in the course of the hearing on the motions did it appear that they claimed they had not violated the Regulation. The attorney for the appellants denied that the recommendations of the Probation Officer had been read to him before the pleas of guilty were entered. The resolving of the conflicting evidence was within the discretion of the trial court.

We hold that no error was committed in the denial of the motion to set aside the pleas of guilty and permit appellants to plead not guilty.

The judgments are affirmed.

MATHEWS, Circuit Judge (concurring in the result).

Appellants, Aron Rosensweig and Abe Rosensweig, were charged by information with having violated §§ 4(a) and 205(b) of the Emergency Price Control Act of 1942, 50 U.S.C.A.Appendix, §§ 904(a) and 925(b), by violating regulations[1] under § 2 of the Act, 50 U.S.C.A.Appendix, § 902. The information was in six counts. Appellants were arraigned and pleaded not guilty to each count. Thereafter, on August 11, 1943, they withdrew their pleas of not guilty and pleaded guilty to counts 1 and 3. On August 30, 1943, judgments were entered sentencing appellants on count 1, suspending the imposition of sentence on count 3, and dismissing counts 2, 4, 5 and 6. On August 31, 1943, appellants made a motion to vacate the judgments. An order denying the motion was entered on September 2, 1943. These appeals were taken on September 3, 1943. They are from the judgments, not from the order.

Appellants contend that the Emergency Price Control Act of 1942 is unconstitutional. The contention should be rejected upon the authority of Yakus v. United States, 321 U.S. 414, 64 S.Ct. 660; Bowles v. Willingham, 321 U.S. 503, 64 S.Ct. 641; Fink v. United States, 9 Cir., 142 F.2d 443; Taylor v. United States, 9 Cir., 142 F.2d 808.

Appellants contend that the regulations they were charged with violating are invalid. We are not empowered to consider the question thus attempted to be raised. See § 204(d) of the Act, 50 U.S.C.A. § 904 (d); Yakus v. United States, supra; Bowles v. Willingham, supra; Taylor v. United States, supra.

Appellants contend that the court below abused its discretion in denying the motion to vacate the judgments. The question thus attempted to be raised cannot be raised on these appeals, for these appeals are not from the order denying the motion to vacate the judgments,[2] but are from the judgments. On such an appeal, such an order is not reviewable.

The judgments should be affirmed.

---

[1] Regulation No. 148 (Federal Register 8609) and Regulation No. 169 (Federal Register 10381).

[2] Cf. Gargano v. United States, 9 Cir., 140 F.2d 118, and cases there cited.