**TAYLOR v. PORTER, Price Administrator.**
**No. 279.**

United States Emergency Court of Appeals.

Heard at San Francisco April 20, 1946.
Decided July 31, 1946.

Rehearing Denied Sept. 4, 1946.

Stanley W. Taylor, complainant, in pro. per.

Harry H. Schneider, Chief, Court Review Rent Branch, O.P.A., of Washington, D. C. (Richard H. Field, Gen. Counsel, and Jacob D. Hyman, Associate Gen. Counsel, both of O.P.A., both of Washington, D. C., and Lewis Leeds, Atty., O.P.A., of New York City, on the brief), for respondent.

Before MARIS, Chief Judge, and McALLISTER and LAWS, Judges.

MARIS, Chief Judge.

The complaint now before us keeps alive a controversy which on the surface appears to have its origin in a difference of opinion as to the maximum rents permissible for housing units in a building owned by the complainant, but which actually is deeply rooted in the complainant's bitter antagonism in principle to all rent control. Maximum Rent Regulation No. 28[1] established March 1, 1942 as the maximum rent date for housing accommodations in the San Francisco Bay Defense-Rental Area. The Price Administrator has consistently ruled that Section 4(a) of the

[1] 7 F.R. 4913, issued June 30, 1942, effective July 1, 1942. This regulation was subsequently designated Rent Regulation for Housing, 8 F.R. 7322.

regulation [2] is applicable to the apartments in an apartment building owned by the complainant and his wife located in San Francisco and that the maximum rents are the rents on the freeze date. The complainant has just as consistently maintained that the apartments were changed from fully furnished to unfurnished and for that reason Section 4(d) (3) of the regulation rather than Section 4(a) established the maximum rents. Also he has taken the stand that he had made a major capital improvement to the building and that as a result Section 4(d) (4) of the regulation established his maximum rents. Under subparagraph (3) or (4) the maximum rents established are the first rents for the accommodations after such construction or change.[3]

Proceeding on the theory that his statements on both points must be accepted without contradiction the complainant after the effective date of the regulation charged rents in excess of those established on March 1, 1942. The Administrator put the matter to the test by instituting in the United States District Court for the Northern District of California civil proceedings for an injunction and criminal proceedings for the wilful violation of the regulation. The complainant failed to convince the court as to the merits of his claims and the injunction issued. Nor was he any more successful with the jury in pleading his defenses since it returned a verdict of guilty. The judgments in both the criminal and civil actions were affirmed by the Circuit Court of Appeals for the Ninth Circuit.[4]

The complainant, however, has not been entirely on the defensive in his controversy with the Price Administrator. Soon after the promulgation of the regulation he filed a protest against the Emergency Price Control Act, 50 U.S.C.A.Appendix, § 901 et seq., and the Rent Regulation with the Administrator which was denied. Thereafter, on October 23, 1942 he filed a complaint in this court in which he attacked the act and the regulation upon broad constitutional grounds. We found no merit in his objections and dismissed the complaint on July 15, 1943.[5]

On August 30, 1943, while the civil and criminal proceedings to which we have referred were still undecided on appeal, the complainant filed a complaint in this court against the Administrator's refusal to grant him a certificate permitting the eviction of his tenants so that he might withdraw the apartments from the rental market. We held that he was entitled by the express terms of the act to withhold his housing accommodations from the rental market if he so desired and remanded the cause to the Administrator for further proceedings in conformity with our opinion.[6]

The complaint now before us is the third involving this same complainant to reach us for consideration on the merits. The plethora of contentions which it advances may be resolved into four main categories, namely, that the act is unconstitutional; that the regulation is invalid; that the Ad-

---

[2] "Sec. 4. Maximum rents * * * shall be:

"(a) For housing accommodations rented on the maximum rent date, the rent for such accommodations on that date."

[3] "Sec. 4. Maximum rents * * * shall be:

"(d) For (1) newly constructed housing accommodations without priority rating first rented after the maximum rent date, and before the effective date of regulation, or * * * (3) housing accommodations changed between those dates from unfurnished to fully furnished, or from fully furnished to unfurnished, or (4) housing accommodations substantially changed between those dates by a major capital improvement as distinguished from ordinary repair, replacement and maintenance, the first rent for such accommodations after such construction or change: Provided, however, That, where such first rent was fixed by a lease which was in force at the time of a major capital improvement, the maximum rent shall be the first rent after termination of such lease."

[4] Taylor v. United States, 9 Cir.1944, 142 F.2d 808, cert. den., 1944, 323 U.S. 723, 65 S.Ct. 56, 89 L.Ed. 581; Taylor v. Bowles, 9 Cir.1945, 147 F.2d 824. See also Taylor v. Bowles, 9 Cir.1945, 152 F. 2d 311, cert. den. 1946, 66 S.Ct. 811.

[5] Taylor v. Brown, Em.App.1943, 137 F.2d 654, cert. den. 320 U.S. 787, 64 S. Ct. 194, 88 L.Ed. 473.

[6] Taylor v. Bowles, Em.App.1944, 145 F. 2d 833.

ministrator's interpretations are confusing and misleading; and that the federal district court and circuit court of appeals were in error in deciding against the complainant the cases to which we have referred. Each of these categories of objections will be considered in turn.

We are asked to declare the act unconstitutional upon the ground that according to its review provisions it was possible for a defendant in a criminal case to be convicted of the violation of a regulation by a court which was required to proceed on the assumption that the regulation was valid, even though the defendant was diligently seeking to have the regulation declared invalid by the Emergency Court of Appeals. Complainant says that this is exactly what happened to him and that consequently he is not precluded by the decisions of the Supreme Court from raising the issue, since that court expressly reserved such a situation from the scope of its decision.[7] This contention is not open to the complainant in this case, however, for several reasons which we shall state.

■■ In the first place the determination of the question as to the constitutionality of the act which the complainant here seeks to raise was open to him to raise and have decided in the district court and circuit court of appeals in his criminal and civil cases. See Yakus v. United States, 1944, 321 U.S. 414, 64 S.Ct. 660, 88 L.Ed. 834, a case in which the district court, the circuit court of appeals and the Supreme Court each in turn considered and decided on the merits without reference to this court the questions as to the constitutionality of the act which the de-

fendants had raised in their defense. The determination of questions as to the constitutional validity of the act, as contrasted with questions as to the validity of regulations and orders issued under the act, was not withdrawn by section 204(d) of the act from the district courts and circuit courts of appeals.[8] Indeed complainant did raise numerous constitutional questions in the district court and circuit court of appeals[9] which those courts decided against him and he raised this very contention in his petition to the Supreme Court for a writ of certiorari which petition the Supreme Court denied.[10]

■ Moreover prior to the filing of the protest upon which the present complaint was based Congress amended Section 204 of the act by adding to it subsection (e). Section 204(e)[11] provides that in an enforcement case a defendant on a proper showing may procure a stay so as to enable him to procure an adjudication by this court as to the validity of the regulation upon which the enforcement case was based. The amendment was made in the light of the opinion in Yakus v. United States, 1944, 321 U.S. 414, 64 S.Ct. 660, 88 L.Ed. 834.[12] It will thus be seen that no basis for the asserted constitutional defect in the act upon which the complainant now relies has existed since June 30, 1944. The point is, therefore, now of academic interest only so far as prospective relief against the act and regulation is concerned.

■ Finally we observe that the complainant's contention is in any event wholly without merit. The fact is that the objections to the act and regulation which the complainant was pressing in this court at

---

[7] See Yakus v. United States, 1944, 321 U.S. 414, 446, 447, 64 S.Ct. 660, 88 L. Ed. 834.

[8] The report of the Senate Committee on Banking and Currency (Sen.Rep. 931, 77th Cong., 2d Sess.) states (p. 25), "Thus the bill provides for exclusive jurisdiction in the Emergency Court of Appeals and in the Supreme Court to determine the validity of regulations or orders issued under section 2. Of course, the courts in which criminal or civil enforcement proceedings are brought have jurisdiction, concurrently with the Emergency Court, to determine

the constitutional validity of the statute itself."

[9] See 142 F.2d 808, 817.

[10] 323 U.S. 723, 65 S.Ct. 56, 89 L.Ed. 581 (October 9, 1944); rehearing denied 323 U.S. 813, 65 S.Ct. 113, 89 L.Ed. 647 (November 6, 1944).

[11] 50 U.S.C.A.Appendix, § 924(e).

[12] 78th Cong., 2d Sess., Senate Report No. 922, pp. 12, 13. See also remarks of Senator Danaher, a member of the Committee on Banking and Currency, 90 Cong. Rec. p. 5305.

the time of his conviction in the district court in 1943 were all determined by this court to be wholly without merit long before his conviction was affirmed by the circuit court of appeals in 1944. Since the complainant before his conviction became final thus actually had a judicial determination of all the points of invalidity which he sought to raise in his defense it is difficult to see how he can seriously contend that the act operated to deny him due process of law. The complainant had the opportunity then to raise the questions which he now presents. His failure to do so was wholly his own responsibility and obviously cannot impair the validity of the act.

██ The remaining grounds asserted by the complainant as reasons for declaring the act unconstitutional, namely that it confers improper powers upon the Administrator, that it violates the due process clause, that Section 205 is vague and uncertain, that Section 305 permits violation of the Constitution and that Section 4(a) improperly requires compliance with all regulations before their validity is legally established, have all been settled adversely to the contentions of the complainant. Yakus v. United States, 1944, 321 U.S. 414, 64 S.Ct. 660, 88 L.Ed. 834; Bowles v. Willingham, 1944, 321 U.S. 503, 64 S.Ct. 641, 88 L.Ed. 892. Moreover the complainant is precluded from raising a second time in this court grounds of alleged unconstitutionality which this court decided against him in Taylor v. Brown, Em.App. 1943, 137 F.2d 654, cert. den. 320 U.S. 787, 64 S.Ct. 194, 88 L.Ed. 473. Safeway Stores v. Porter, Em.App.1946, 154 F.2d 656, cert. den. 1946, 66 S.Ct. 1367.

The complainant's argument that the regulation is invalid because it is vague and uncertain runs somewhat as follows: Section 4(a) of the act makes it a criminal offense to charge rentals in excess of the maximum rents established by the regulation. It is therefore essential to due process that one be able to ascertain from the regulation with certainty the maximum rents applicable to the specific housing accommodation involved. But under the peculiar circumstances of the complainant's case there were three maximum rents from which the complainant had to choose. Those circumstances may be summarized:

On August 16, 1941 the complainant and his wife acquired title to an apartment building containing 50 housing units located in San Francisco. The apartments were fully furnished. A few weeks later Mrs. Evelyn Flynn became the manager. On June 6, 1942 the complainant executed what purported to be a sales contract whereby Mrs. Flynn purchased all the furniture in the building for $15,000. She was to pay $1 at the time of the execution of the contract. The remainder of the consideration was to be derived from rentals paid her by the tenants. The furniture was not to be moved from any of the apartments and in fact was not moved. Mrs. Flynn could not assign the contract.

Subsequent to the execution of the contract between the complainant and Mrs. Flynn each tenant paid, in lieu of the former rent, a basic rent for the apartment, rental charges for the furniture and additional amounts representing reimbursement for the cost of utilities, cleaning and maintenance. The total charges exceeded by from $2 to $15 per month the rentals for the identical apartment, furniture and services established on March 1, 1942. The revised rentals were put into effect prior to the issuance of MRR No. 28 on June 30, 1942 but after the issuance of the designation of the San Francisco Bay Defense Rental Area on April 28, 1942.[13] All of the housing accommodations involved were rented on March 1, 1942.

On June 26, 1942 the complainant completed the installation in the building of a Bendix washing machine at a total cost of approximately $500. Each of the tenants was allowed the use of the new laundry facilities under rules prescribed by the complainant. This privilege, however, could be withdrawn at the option of the complainant at any time.

The complainant argues that under these circumstances he as a landlord was compelled to choose at his peril among three differing maximum rents. Section 4(d)

[13] 7 F.R. 3195.

(3) establishes as the maximum rent the first rent charged after the change from fully furnished to unfurnished, which he says took place on June 6, 1942. This affected 44 apartments. Then Section 4(d) (4) establishes as the maximum rent the first rent charged after a major capital improvement, which he asserts was made June 26, 1942. This affected 50 apartments among which were the identical 44 apartments just referred to. Finally, Section 4(d) (4) establishes as the maximum rent where a lease was in existence for an apartment which benefited by a major capital improvement the first rent after the termination of the lease.

■ We find no ambiguity in the sections of the regulation to which the complainant directs his attack. It seems to us that the problem is solely whether the facts require that the rents be established as freeze date rents under Section 4(a) or as first rents under Sections 4(d) (3) or 4(d) (4). The real issue is not as to the clarity of the regulation but rather whether the contract with Mrs. Flynn was effective to change the character of the apartments from fully furnished to unfurnished and whether the installation of the laundry equipment was in fact a major capital improvement. No one, not even the complainant, was in doubt as to the factors which had to be present to bring the rents within one or another of the subparagraphs of the section. The complainant's case presents merely the normal situation in which a definite legal rule must be applied to a somewhat complicated set of facts. The regulation is no less certain and definite merely because the trial court disagreed with the complainant as to its application to the facts of his case.

We may add that we find the phrase "major capital improvement as distinguished from ordinary repair, replacement and maintenance" appearing in Section 4 (d) (4) of the regulation susceptible of understanding and application. We note also that there was available at the time of the installation of the laundry equipment as well as at the time the alleged change

took place a procedure whereby the complainant might have enlisted the aid of the Administrator to establish the maximum rents. Section 5(d) of the regulation provides that "If the rent on the date determining the maximum rent or any other fact necessary to the determination of the maximum rent is in dispute between the landlord and the tenant, or is in doubt, or is not known * * *." the Administrator may on petition of the landlord determine the facts and enter an order fixing the maximum rent. The complainant did not avail himself of this procedure until after the district court had rendered its judgments. We conclude that the regulation is not invalid for uncertainty.

■ We find no merit in the contention that the regulation is invalid because it compels the complainant to offer his accommodations for rent in violation of Section 4(d) of the act.[14] We have heretofore held at the suit of this complainant that a landlord is entitled under the provisions of the act to withdraw his accommodations from the rental market and that he is entitled under the provisions of the regulation to an eviction certificate if his real purpose is to allow his accommodations to remain vacant until he can lawfully rent them at a higher figure or until he can sell them. Taylor v. Bowles, Em. App.1945, 145 F.2d 833. The requirement in the regulation that the landlord may not proceed to evict without a certificate of eviction by the Administrator and that the Administrator must be satisfied that the real purpose of the eviction is to withdraw the accommodations from the rental market is a wholly reasonable precaution against the use of evictions as a means for evasion of rent controls.

■ The complainant contends that the regulation is invalid because it is not generally fair and equitable and is thus in violation of Section 2(b) of the act. In support of this contention he asserts that the Administrator has frozen rents at their lowest level during a period of 30 years; that in general prices have risen substantially as have wages and that rents alone

14 "Nothing in this Act shall be construed to require any person to sell any commodity or to offer any accommodations for rent." 50 U.S.C.A.Appendix, § 904(d).

have been held rigid and that the Administrator has made no provision in the regulation for increased costs and property taxes since the maximum rent date. The data submitted by the complainant does have probative value upon the aspect of increased costs of living. He has not produced evidence that landlords generally have been unable to absorb these increased costs out of increased income arising from greater occupancy, however. We find no support in the exhibits to which the complainant has referred us for a finding that in actual operation these costs result in an unfair level of rentals generally. Spaeth v. Brown, Em.App.1943, 137 F.2d 669.

■ The complainant contends that the Administrator's Official Interpretations 4 (d)-I [15] and 5(a) (1)-I [16] with respect to the meaning of the term "major capital improvement" as used in Section 4(d) of the regulation and the determination of the question as to whether such an improvement has been made, are vague, uncertain, ineffective and, therefore, constitute entrapment. The Administrator, on the other hand, urges that his interpretations, as such, are not protestable under the act since they are not regulations or orders under Section 2. Therefore, he says, this court is without power to set such interpretations aside. We agree with the Administrator's contention in this regard, although, as we pointed out in Conklin Pen Co. v. Bowles, 1946, 152 F.2d 764, it is often necessary for us preliminarily to determine whether the interpretation of a regulation as applicable to a complainant is correct before we reach the questions of validity of the regulation which he raises. There is here no such necessity, however, since the regulation is unquestionably applicable to the complainant regardless of the interpretations here attacked and we have considered and passed upon the questions of validity of the regulation which he has raised.

■ We think it appropriate to say, however, that an examination of the interpretations here under attack satisfies us that there is no merit whatever in the complainant's contentions with respect to them. We do not find them to be either vague or uncertain. Moreover it should be noted that the complainant was free to question the propriety of these interpretations in the district court, and that the district court and the circuit court of appeals had full power to pass upon the proper meaning and application of the regulation thus sought to be interpreted by the Administrator. Gordon v. Bowles, Em.App.1946, 153 F.2d 614. An examination of the opinions of the circuit court of appeals in the complainant's two cases [17] demonstrates that extensive consideration was in fact given by that court to both interpretations. Indeed one of the complainant's contentions in the circuit court of appeals appears to have been that the district court failed to follow Interpretation 5(a) (1)-I, which the complainant then appeared to look upon with favor, in applying the regulation to the facts of his case.

This brings us to the complainant's final group of contentions, namely, that in numerous respects errors were committed by the district court and the circuit court of appeals in his cases which the court should, somehow, review and correct. Thus the complainant urges that the district court erred in determining that the laundry and plumbing equipment which he installed was not a major capital improvement and that the apartments were not changed from fully furnished to unfurnished, and also that the circuit court of appeals erred in its interpretation of the regulation.

■ It is a sufficient answer to the contentions just mentioned to point out that Section 204 of the act, which created this court and describes our powers, has not conferred upon us any jurisdiction to review the proceedings and decisions of any other court. Errors, if any, committed by other courts in the application of the Emergency Price Control Act and the regulations issued thereunder to the facts of

---

[15] Pike & Fischer, OPA Service, p. 200:-1251.

[16] Pike & Fischer, OPA Service, p. 200:-1481.

[17] 142 F.2d 808 (1944); 147 F.2d 824 (1945).

particular cases may, therefore, be corrected only by recourse to the normal appellate procedure prescribed by law for such courts. The complainant in fact invoked this procedure to the full, as we have seen, and he is bound by the results. It follows that the complainant's contentions which fall within this category are not within our cognizance and that we may not consider them.

The other contentions of the complainant which have not been mentioned have been considered but are so wholly without merit as to require no discussion.

A judgment will be entered dismissing the complaint.