## TAYLOR et al. v. BOWLES, Administrator, OPA.

### No. 10509.

Circuit Court of Appeals, Ninth Circuit.

Jan. 17, 1945.

---

[5] 21 U.S.C.A. §§ 342(a) (3) and 334(a).

825

Walter & Brown, of Oakland, Cal. (John
C. Stirrat, of San Francisco, Cal., of
counsel), for appellants.

Thomas I. Emerson, Deputy Adm'r for Enforcement, Fleming James, Jr., Director, Litigation Division, David London, Chief, Appellate Branch, and Albert Dreyer, Atty., OPA, all of Washington, D. C., and W. Dunlap Cannon, Jr., and David C. Dunlap, Attys., OPA, both of San Francisco, Cal., for appellee.

Before GARRECHT, STEPHENS, and HEALY, Circuit Judges.

STEPHENS, Circuit Judge.

Stanley Taylor, Isabelle D. Taylor and Evelyn Flynn, appeal from a final judgment of the United States District Court, restraining them from violating Maximum Rent Regulation No. 28, issued under the Emergency Price Control Act of 1942, 56 Stat. 23, 50 U.S.C.A.Appendix, § 901 et seq., hereinafter called the Act.[1,2] This appeal is also from an order adjudging ap-

---

[1] Section 2(b) of the Act authorizes the Price Administrator to prescribe by regulation the maximum rents which may be demanded or received for housing accommodations within any defense-rental area (which by Section 302(d) of the Act is defined as meaning any "area designated by the Administrator as an area where defense activities have resulted or threaten to result in an increase in the rents for housing accommodations inconsistent with the purposes of this Act.")

Other pertinent parts of the Act are as follows:

§ 2(d). "Whenever in the judgment of the Administrator such action is necessary or proper in order to effectuate the purposes of this Act, he may, by regulation or order, regulate or prohibit speculative or manipulative practices (including practices relating to changes in form or quality) or hoarding, in connection with any commodity, and speculative or manipulative practices or renting or leasing practices (including practices relating to recovery of the possession) in connection with any defense-area housing accommodations, which in his judgment are equivalent to or are likely to result in price or rent increases, as the case may be, inconsistent with the purposes of this Act."

§ 4(a). "It shall be unlawful, regardless of any contract, agreement, lease, or other obligation heretofore or hereafter entered into, for any person to sell or deliver any commodity, or in the course of trade or business to buy or receive any commodity, or to demand or receive any rent for any defense-area housing accommodations, or otherwise to do or omit to do any act, in violation of any regulation or order under section 2, or of any price schedule effective in accordance with the provisions of section 206, or of any regulation, order, or requirement under section 202(b) or section 205(f), or to offer, solicit, attempt, or agree to do any of the foregoing."

§ 4(d). "Nothing in this Act shall be construed to require any person to sell any commodity or to offer any accommodations for rent."

§ 204(d). "Within thirty days after entry of a judgment or order, interlocutory or final, by the Emergency Court of Appeals, a petition for a writ of certiorari may be filed in the Supreme Court of the United States, and thereupon the judgment or order shall be subject to review by the Supreme Court in the same manner as a judgment of a circuit court of appeals as provided in section 240 of the Judicial Code, as amended (U.S.C. 1934 edition, Title 28, sec. 347). The Supreme Court shall advance on the docket and expedite the disposition of all causes filed therein pursuant to this subsection. The Emergency Court of Appeals, and the Supreme Court upon review of judgments and orders of the Emergency Court of Appeals, shall have exclusive jurisdiction to determine the validity of any regulation or order issued under section 2, of any price schedule effective in accordance with the provisions of section 206, and of any provision of any such regulation, order, or price schedule. Except as provided in this section, no court, Federal, State, or Territorial, shall have jurisdiction or power to consider the validity of any such regulation, order, or price schedule, or to stay, restrain, enjoin, or set aside, in whole or in part, any provision of this Act authorizing the issuance of such regulations or orders, or making effective any such price schedule, or any provision of any such regulation, order, or price schedule, or to restrain or enjoin the enforcement of any such provision."

§ 205(a). "Whenever in the judgment of the Administrator any person has engaged or is about to engage in any acts or practices which constitute or will constitute a violation of any provision of section 4 of this Act, he may make application to the appropriate court for an order enjoining such acts or practices, or for an order enforcing compliance with such provision, and upon a showing by the Administrator that such person has engaged or is about to engage in any such acts or practices a permanent or temporary injunction, restraining order, or other order shall be granted without bond."

[2] Maximum Rent Regulation No. 28 (7 Fed.Reg. 4913) was issued under Section 2(b) of the Act and became effective on July 1, 1942, as to the San Francisco Bay

pellant, Stanley Taylor, in contempt of court for violation of a temporary restraining order issued in the same action.

The appellants, Stanley W. Taylor and Isabelle D. Taylor, are the owners of an apartment house at 530 Larkin Street, San Defense-Rental Area, which includes the City and County of San Francisco as well as neighboring counties. On May 31, 1943, the Administrator codified and combined over three hundred identical rent regulations, including Maximum Rent Regulation No. 28, as amended, into one master "Rent Regulation for Housing" (8 Fed. Reg. 7322). No change in any of the substantive provisions of any of the regulations was made by the codification. Even the language and numerical order of the sections comprising the several regulations were retained.

The pertinent parts of the Regulation read as follows:

§ 2. "Prohibition against higher than maximum rents—(a) General prohibition.—Regardless of any contract, agreement, lease, or other obligation heretofore or hereafter entered into, no person shall demand or receive any rent for use of occupancy on and after the effective date of regulation of any housing accommodations within the Defense-Rental Area higher than the maximum rents provided by this regulation; and no person shall offer, solicit, attempt, or agree to do any of the foregoing. Lower rents than those provided by this regulation may be demanded or received."

§ 3. "Minimum services, furniture, furnishings, and equipment.—Except as set forth in section 5(b), every landlord shall, as a minimum, provide with housing accommodations the same essential services, furniture, furnishings, and equipment as those provided on the date determining the maximum rent, and as to other services, furniture, furnishings, and equipment not substantially less than those provided on such date: Provided, however, That where fuel oil is used to supply heat or hot water for housing accommodations, and the landlord provided heat or hot water on the date determining the maximum rent, the heat and hot water which the landlord is required to supply shall not be in excess of the amount which he can supply under any statute, regulation, or order of the United States or any agency thereof which rations or limits the use of fuel oil." *

§ 4. "Maximum rents.—Maximum rents (unless and until changed by the Administrator as provided in section 5) shall be:

"(a) Rented on maximum rent date.—For housing accommodations rented on the maximum rent date [March 1, 1942] the rent for such accommodations on that date.

"(b) Not rented on maximum rent date but rented during two months ending on that date.—For housing accommodations not rented on the maximum rent date, but rented at any time during the two months ending on that date, the last rent for such accommodations during the two-month period.

"(c) First rent after the maximum rent date but before effective date.—For housing accommodations not rented on the maximum rent date nor during the two months ending on that date, but rented prior to the effective date of regulation, the first rent for such accommodations after the maximum rent date. The Administrator may order a decrease in the maximum rent as provided in Section 5(c).

"(d) Constructed or changed before effective date.—For (1) newly constructed housing accommodations without priority rating first rented after the maximum rent date, and before the effective date of regulation, or (2) housing accommodations changed between those dates so as to result in an increase or decrease of the number of dwelling units in such housing accommodations, or (3) housing accommodations changed between those dates from unfurnished to fully furnished, or from fully furnished to unfurnished, or (4) housing accommodations substantially changed between those dates by a major capital improvement as distinguished from ordinary repair, replacement and maintenance, the first rent for such accommodations after such construction or change: Provided, however, That, where such first rent was fixed by a lease which was in force at the

---

* Prior to an amendment which became effective on November 25, 1942, this section reads as follows:

"1388.1753. Minimum services.—The maximum rents provided by this Maximum Rent Regulation are for housing accommodations including as a minimum, services of the same type, quantity, and quality as those provided on the date determining the maximum rent. If, on the effective date of this Maximum Rent Regulation, the services provided for housing accom- modations are less than such minimum services, the landlord shall either restore and maintain the minimum services or, within 30 days after such effective date, file a petition pursuant to Section 1388.-1755(b), for approval of the decreased services. In all other cases, except as provided in Section 1388.1755(b), the landlord shall provide the minimum services unless and until an order is entered pursuant to that Section approving a decrease of such services."

Francisco, California, and the appellant, Evelyn Flynn, is the manager thereof.

The Price Administrator filed under Section 205(a) of the Emergency Price Control Act a complaint against the appellants, charging them under counts 1, 3 and 4 thereof with having violated Maximum Rent Regulation 28 as follows: (a) By demanding and receiving higher rents for the apartments than those permitted by the Regulation; (b) by evicting and attempting to evict certain tenants from the apartments, notwithstanding the fact that under the Act the tenants were lawfully entitled to remain in possession; and (c) by renting and offering for rent housing accommodations without having filed any registration statements as required by the regulation.[3]

The complaint concluded with a prayer for a temporary restraining order, a preliminary injunction, and a permanent in-

time of a major capital improvement, the maximum rent shall be the first rent after termination of such lease. The Administrator may order a decrease in the maximum rent as provided in section 5(c)."

§ 5. "Adjustments and other determinations.—In the circumstances enumerated in this section, the Administrator may issue an order changing the maximum rents otherwise allowable or the minimum services required. In those cases involving a major capital improvement, an increase or decrease in the furniture, an increase or decrease of services, an increase or decrease in the number of subtenants or other occupants, or a deterioration, the adjustment in the maximum rent shall be the amount the Administrator finds would have been on the maximum rent date, the difference in the rental value of the housing accommodations by reason of such change: Provided, however, That no adjustment shall be ordered where it appears that the rent on the date determining the maximum rent was fixed in contemplation of and so as to reflect such change. In all other cases, except those under paragraph (a) (7) and (c) (6) of this section, the adjustment shall be on the basis of the rent which the Administrator finds was generally prevailing in the Defense-Rental Area for comparable housing accommodations on the maximum rent date: Provided, that in cases under paragraph (c) (8) of this section due consideration shall be given to any increased occupancy of the accommodations since that date by subtenants or other persons occupying under a rental agreement with the tenant. In cases involving construction due consideration shall be given to increased costs of construction, if any, since the maximum rent date. In cases under paragraph (a) (7) and (c) (6) of this section the adjustment shall be on the basis of the rents which the Administrator finds were generally prevailing in the Defense-Rental Area for comparable housing accommodations during the year ending on the maximum rent date.

"(a) Grounds for increase of maximum rent.—Any landlord may file a petition for adjustment to increase the maximum rent otherwise allowable, only on the grounds that: [Here follows an enumeration of the grounds on which the Administrator on petition of a landlord may permit an increase in the rents which the landlord may charge.]"

§ 6. "Removal of tenant—(a) Restrictions on removal of tenant.—So long as the tenant continues to pay the rent to which the landlord is entitled, no tenant shall be removed from any housing accommodations, by action to evict or to recover possession, by exclusion from possession, or otherwise, nor shall any person attempt such removal or exclusion from possession, notwithstanding that such tenant has no lease or that his lease or other rental agreement has expired or otherwise terminated, and regardless of any contract, lease, agreement or obligation heretofore or hereafter entered into which provides for entry of judgment upon the tenant's confession for breach of the covenants thereof or which otherwise provides contrary hereto, unless: [Here follows an enumeration of six grounds for evicting tenants, none of which is applicable in this case.]

"(b) Administrator's certificate—(1) Removals not inconsistent with Act or regulation.—No tenant shall be removed or evicted on grounds other than those stated above unless, on petition of the landlord, the Administrator certifies that the landlord may pursue his remedies in accordance with the requirements of the local law. The Administrator shall so certify if the landlord establishes that removals or evictions of the character proposed are not inconsistent with the purposes of the Act or this regulation and would not be likely to result in the circumvention or evasion thereof."

3 The appellants were charged under counts 2, 5 and 6 of the complaint with having violated Maximum Rent Regulation 32A (relating to hotels and rooming houses) in respect to four of the forty-eight apartments in the building, but since it later developed that none of the apartments were subject to Regulation 32A and that all were subject to Maximum Rent Regulation 28, counts 2, 5 and 6 will be disregarded.

junction restraining the appellants from violating the Regulation and requiring them to abide by its terms.

Appellants' answer pleaded that the Act and Regulation were unconstitutional and void and generally denied that they had violated either.

Upon the filing of the complaint, which was supported by affidavits, a temporary restraining order was issued, enjoining appellants from demanding or receiving for any housing accommodation in the San Francisco Bay Defense-Rental Area (including furniture) (other than a room in a hotel or rooming house) rents or total charges in excess of the rental rate effective on March 1, 1942, and from excluding or threatening or attempting to exclude by any means whatever Lloyd C. Havercroft or any other tenant from possession of any housing accommodations contrary to the provisions of Maximum Rent Regulation No. 28 or contrary to the provisions of Section 4(a) of the Emergency Price Control Act of 1942.

By successive orders the temporary restraining order was continued in effect until January 25, 1943.

Prior to the trial on the merits a stipulation of fact was entered into by the parties with reference to the issues raised by the complaint and answer. Two schedules attached thereto show the rents charged for the apartments on March 1, 1942, July 1, 1942, and November 1, 1942, and that the tenants were charged in November, 1942, for the occupancy of their apartments from $2 to $15 more monthly than they were charged for the same apartments in March, 1942.

It was further stipulated that on June 6, 1942, Stanley W. Taylor and Evelyn Flynn entered into an agreement whereby Taylor purported to sell the furniture and furnishings in the apartment house to Mrs. Flynn for $15,000. The agreement provided that the purchase price, of which only $1 was paid on the execution of the agreement, should be paid solely from charges to be thenceforth imposed on tenants of the apartments for the use of the furniture and furnishings. The utilization of the furniture and furnishings by Mrs. Flynn for any purpose was by the express terms of the agreement restricted to the apartment house. The furniture was not moved from the apartments as a result of the execution of the agreement but remained in the apartments subject to occasional replacements and the shifting of individual items from one apartment to another.

On July 31, 1942, the agreement was modified by a supplementary agreement which prohibited the removal of the furniture from the apartment house until such time as the purchase price should be fully paid and also provided that the agreement should not be assigned without the prior consent of Taylor. The supplementary agreement also contained the following: "It is further agreed that if due to governmental interference or for any other cause the purchaser [Evelyn Flynn] finds it impossible to carry out the terms of the purchase, that the return of the furniture and furnishings then in her legal possession to the sellers thereof, shall constitute full payment of any claim against her by the sellers on account of the contract of sale of June 6th, 1942, or as amended."

It was also stipulated as follows:

"On June 27, 1942, Stanley W. Taylor caused to be installed in said apartment house a Bendix Automatic Laundry washing machine at a total cost of approximately $500.00 and this machine was, on or about said date, made available to the use of all tenants in the building. It was not annexed to any particular apartment unit in the building.

"Since March 1, 1942, some 14 apartments in the building have been repainted and/or repapered more or less extensively and some items of furniture have been added or replaced in some of the apartments in the building.

"Except as stated in the preceding paragraphs, there has been no substantial change or improvement in the apartments in the building since March 1, 1942."

After trial on the merits, the court made findings of fact and conclusions of law in which it found the following facts among others:

" * * * that each of said forty-eight (48) apartments was rented on March 1, 1942. Since July 1, 1942, defendants, and each of them, have demanded and received for the use and occupancy of forty-three ('43) of said apartments as housing accommodations for periods subsequent to July 1, 1942, rents in excess of the respective rents for said apartments on March 1, 1942. None of said forty-eight (48) apartments was changed between March 1, 1942, and July 1, 1942, from unfurnished to fully furnished or from fully furnished to unfur-

nished or by a major capital improvement and no order adjusting the maximum rents for any of said apartments has been made by the Price Administrator. * * *.

"* * * that on and since July 1, 1942, defendants, and each of them, have attempted to exclude and have excluded certain tenants of housing accommodations at 530 Larkin Street, San Francisco, California, from possession of such accommodations, although no ground for the eviction of said tenants existed under Maximum Rent Regulation No. 28 * * *.

"* * * that defendants, and each of them have rented and offered for rent, as housing accommodations, apartments at 530 Larkin Street, San Francisco, California, continuously since July 1, 1942, and defendants have not at any time filed any Registration Statements with the Price Administrator, specifying the maximum rents for any of said apartments in accordance with Maximum Rent Regulation No. 28. Defendants have attempted to file certain Registration Statements with the Administrator, but none of said statements specified the maximum rent for any of said Apartments, and none of said statements was in the form prescribed by the Administrator and the employees of the Administrator refused to accept them for these reasons. Defendant did file certain Registration Statements with the Administrator on February 3, 1943, but none of said statements specified the maximum rent for any of said apartments and none of said statements was in the form prescribed by the Administrator."

Judgment was entered restraining the appellants from violating the Regulation, (a) by charging for any of the apartments a rental higher than that charged therefor on March 1, 1942, or (b) by evicting or attempting to evict any of the tenants of the apartments except as permitted by the Regulation; and requiring appellants to file registration statements with the Office of Price Administration showing the maximum legal rents for the apartments as that charged therefor on March 1, 1942.

Prior to the trial on the merits, appellant, Stanley W. Taylor, on December 3 and December 4, 1942, served the tenants of the apartments with a notice to vacate on or before December 15, 1942.

On December 5, 1942, the Price Administrator filed a motion to adjudge said appellant in contempt of court, charging violation of the provisions of the temporary restraining order by the service of notices to vacate.

Appellant answered the motion, admitting the service, but denying that this constituted a violation of the temporary restraining order on the ground that he intended "to withdraw his property from the market and not to offer any accommodations for rent in accordance with the rights granted him pursuant to Subsection (d) of Section 4 of the Emergency Price Control Act of 1942," which subsection provides as follows: "Nothing in this Act shall be construed to require any person to sell any commodity or to offer any accommodations for rent."

Prior to the hearing on the motion, a stipulation of fact was entered into with reference to the issues raised thereby, showing that, in addition to the service of notices purporting to terminate existing tenancies and demanding possession of the apartments occupied by the tenants, appellant filed on December 8, 1942, with the Office of Price Administration a petition for a certificate authorizing the eviction of his tenants in compliance with § 1388.1806 (b) of the Regulation.[4] The petition was denied on January 21, 1943.[5]

With reference to the contempt proceeding, the District Court found: "That

---

[4] § 1388.1806(b) of the Regulation provides: "No tenant shall be removed or evicted on grounds other than those stated above unless, on petition of the landlord, the Administrator certifies that the landlord may pursue his remedies in accordance with the requirements of the local law. The Administrator shall so certify if the landlord establishes that removals or evictions of the character proposed are not inconsistent with the purposes of the Act or this Maximum Rent Regulation and would not be likely to result in the circumvention or evasion thereof."

[5] Thereafter, appellant, Stanley W. Taylor, filed with the Regional Administrator a protest against the order of the Acting Area Rent Director denying his petition. A hearing was granted, and proceedings followed. On August 3, 1943, the Regional Administrator denied said appellant's protest by order of that date. On August 30, 1943, appellant filed a complaint in the United States Emergency Court of Appeals. On November 27, 1944, that court set aside the above orders and remanded the case to the Administrator for further proceedings in conformity with its opinion, to which opinion we refer hereinafter.

defendant, Stanley W. Taylor, together with the other defendants in the above-entitled action are, and at all times herein mentioned have been, the operators of an apartment house at 530 Larkin Street, San Francisco, California, renting apartments therein to tenants as housing accommodations; that on December 3 and December 4, 1942, defendant, Stanley W. Taylor, caused notice to be given to the tenants in forty (40) apartments in said building, requiring each tenant to vacate his apartment on or before December 15, 1942; that in said notices, defendant, Stanley W. Taylor, stated that the tenants were being required to vacate because he wished to withdraw the property from rental. In so doing Defendant Taylor was acting in bad faith in that the reasons stated by him in said notices was not the real motive for the giving of said notices. Withdrawal of property from rental is not a ground for eviction of tenants under Maximum Rent Regulation No. 28 unless and until, on petition of the landlord, the Price Administrator issues a certificate authorizing the landlord to pursue his remedies for eviction in accordance with the requirements of the local law. Defendant, Stanley W. Taylor, had not at the time of serving said notice, and has not since, obtained any such certificate and no such certificate has been issued. Defendant has not formally withdrawn any of said notices.

"The Court further finds that defendant's claim that the Price Administrator does not come before the Court with clean hands is not true.

"From the foregoing facts, the Court concludes that the giving of said notices constituted an attempt to exclude tenants from possession of housing accommodations in violation of said Temporary Order."[6]

A fine of $500 was imposed on appellant, Stanley W. Taylor, but it was to be remitted if he proved to the satisfaction of the court that he had, during the sixty days following the entry of the order, fully and faithfully complied with the order of the court. This he did, and the fine was remitted on July 20, 1943.

The contentions of the appellants, for the most part, appear to be set forth in their opening brief under the caption "Questions Presented and Manner in Which They are Raised." We shall treat them in the order therein presented.

(1) May the trial court lawfully override the provisions and procedures set up in the Emergency Price Control Act of 1942, Maximum Rent Regulation 28, and official interpretations issued by the Office of Price Administration for the guidance of its administrative branches and the public, adversely to appellants merely upon application or argument of an enforcement attorney for the appellee?

This question, say appellants, arises by reason of the fact that it appears from the record that the trial court has overridden these various provisions and procedures in the following manner:

(a) By its holding in both judgments appealed from that appellant Taylor may not withdraw his property from rental without the consent of appellee, the court has nullified the express prohibition of Section 4(d) of the Emergency Price Control Act of 1942 which states: "Nothing in this Act shall be construed to require any person to sell any commodity or to offer any accommodations for rent."

The answer to this question is to be found in Taylor v. Bowles, Em.App., 145 F.2d 833, 834, and it is as follows: "* * * except in a few specified situations, it is provided that the landlord must first obtain authorization from the Office of Price Administration before proceeding to evict a tenant. Originally, one of the situations in which eviction was permitted without prior administrative authorization was where 'the landlord seeks in good faith not to offer the housing accommodations for rent.' Evidently this worked out unsatisfactorily, for a tenant, served with such an eviction notice, would not know whether he was obliged to comply with it or not, in the absence of a conclusive determination of fact as to whether the landlord had the bona fide intention of withdrawing the accommodations from the rental market. The regulation was therefore amended, effective October 20, 1942, * * * so that a landlord wishing to withdraw his housing accommodations from the market could no longer proceed to evict his tenants without prior authorization by the Office of Price Administration. But the regulation as so amended does not conflict with Section 4(d) of the Act, for such a

6 With reference to withdrawal of property from rental, see Taylor v. Bowles, 145 F.2d 833, by the United States Emergency Court of Appeals.

landlord upon a proper showing may obtain an eviction certificate from the Area Rent Director."

■ (b) By holding that none of the apartments in question had been changed by a major capital improvement, the court has overridden official O.P.A. Interpretation 5(a) (1)-I "Elements of Major Capital Improvement," previously known as Regional Rent Memorandum No. 19.

We refer the appellants to the holding of this court in Taylor v. United States, 9 Cir., 1944, 142 F.2d 808. It is therein recited at pages 813, 814 as follows: "The only evidence of any substantial change in the apartment house during the periods involved in the information was the addition about June 27, 1942, of a Bendix washing machine for the general use of the apartment house tenants. The installation of this standard brand appliance necessitated an additional plumbing connection and an electrical outlet contacting the wiring system which was already in the premises.

"In view of the Regulations to which we have adverted earlier in this opinion and of the only interpretation of the Office of Price Administration that has any relevancy here, namely, Interpretation 5 (a) (1)-I, it would, we think, be repugnant to the purposes of the Emergency Price Control Act to conclude that the addition and installation of one electric washing machine, costing $300, in a large apartment house of forty-eight apartments, constitutes a major capital improvement to such housing facilities, particularly to the extent of increasing the total apartment house rentals between $300 and $400 monthly, and increasing the rent for an apartment $12.50 per month, as was done in one instance, at least."[7] Note that the Administrator's interpretation on this point reads as follows: "A structural addition is a clear addition to the housing accommodations, such as the construction of an additional room or a new porch or the installation of plumbing, heating or electricity where such facilities did not previously exist. The addition need not necessarily be a part of the structure, but might also include a new garage or the installation of sidewalks. If the improvement has resulted in some added feature which did not exist prior to the change of a kind which would normally result in an increase in the rental value, then it would be a substantial change by a major capital improvement."

(c) By rendering its judgment in the manner indicated in (b) above, the court has disregarded the provisions and procedures of Maximum Rent Regulation 28, Section 1388.1805(d) and Official O.P.A. Interpretation 4(d)-I, previously known as Interpretation No. 9.

■ We again refer the appellants to the case just cited at page 814 thereof: "* * * This sub-section of the Regulation[8] has no relevance to the instant cause. The section merely states what may be done in those instances wherein a dispute arises between the landlord and tenant, or where there is doubt as to the actual rentals that should be charged for occupancy of the accommodations. Here there was no contention that there was any dispute between Taylor and his tenants relating to rents and whatever doubts may have arisen in the defendant's mind respecting rents that should have been charged for the apartments were, we think, effectually answered by the regulations."

(2) (a) Was the installation for the first time of automatic laundry equipment, and of hot and cold water lines and electric and sewer lines to serve the same, different from ordinary repair, replacement and maintenance?

(b) Was such installation of automatic laundry equipment with plumbing, sewer and electric lines, a clear addition or a new facility added to the housing accommodations and not previously existing there?

[7] Although the value placed on the installation of the washing machine in the instant proceeding is $500 rather than $300 as appears in the criminal proceeding above, yet this is not such an increase as will render the above reasoning inapplicable.

[8] Section 1388.1805(d), Maximum Rent Regulation Number 28, provides: "(d) If the rent on any date determining the maximum rent, or any other fact necessary to the determination of the maximum rent, is in dispute between the landlord and the tenant, or is in doubt, or is not known, the Administrator on petition of the landlord filed within 30 days after the effective date of this Maximum Rent Regulation, or at any time on his own initiative, may enter an order fixing the maximum rent by determining such fact; or if the Administrator is unable to ascertain such fact he shall enter the order on the basis of the rent which he finds was generally prevailing in the Defense-Rental Area for comparable housing accommodations on March 1, 1942."

(c) Did such installation result in an added feature which would normally result in an increase in the rental value?

These questions are repetitious and, we think, are fully answered above.

■ (3) Could the extensive work of painting, papering, refinishing and refurnishings in some fourteen of appellants' apartments, taken into consideration with the existing circumstance of initially low rentals be expected to result in a comparatively high percentage adjustment in rentals?

This question, say appellants, arises because Interpretation 5(a) (1)–I, issued by the Office of Price Administration setting forth "Elements of Major Capital Improvement" for the guidance of the public, as well as its own employees, sets forth in subdivision (3) thereof that under such circumstances complete rehabilitation of housing accommodations constitutes a major capital improvement.

The Administrator's interpretation on this point reads as follows: "A complete rehabilitation is a general modernization and reconstruction such as would make the property attractive in a different rental range. Even though the individual items involved would, if considered separately, be normal repair, replacement and maintenance, if in the aggregate, there is a substantial change in the character of the housing accommodations, there would be grounds for adjustment. The difference between a rehabilitation which is a major capital improvement and ordinary repairs is primarily a question of degree and extent. Only where the rehabilitation is so comprehensive that it could be expected to result in a comparatively high percentage adjustment in rental would it constitute a major capital improvement." Contrary to the contention of appellant, Stanley W. Taylor, the appellant, Evelyn Flynn, testified that of the fourteen apartments alleged to have been renovated, only seven were so renovated between March 1, 1942, and July 1, 1942. Although the record shows that the amount of expenditures in this regard was approximately $2,000 during this period, plus some additional expenditures for renovations thereafter, the description of the work done shows that it consisted of ordinary maintenance and repairs. We do not find clear error in the trial court's finding that there had not been a complete rehabilitation of the apartments within the meaning of the foregoing definition.

■ (4) What are the maximum legal rents applicable to the property in question under Maximum Rent Regulation 28? (a) Are they the rents charged on March 1, 1942, or (b) are they the first rents charged after the changes and improvements made between March 1, 1942, and July 1, 1942?

Quite plainly the maximum legal rents applicable to the property in question under the Regulation are the rents charged on March 1, 1942, since it was found by the court that there were no major capital improvements such as would entitle appellants to additional rent. The first rents charged, if any, after the alleged changes and improvements made between March 1, 1942, and July 1, 1942, should, therefore, be disregarded. For general information regarding maximum rents chargeable, see Maximum Rent Regulation No. 28, Section 4, et seq., set forth in footnote 2 hereof.

(5) (a) May appellants be compelled to continue renting the property in question under the provisions of the Emergency Price Control Act of 1942?

(b) May the appellants or either of them as to their respective interests, be compelled to obtain the consent of appellee before withdrawing their property from rental, i.e., recovering possession thereof, when they no longer wish to rent such property?

(c) Is Maximum Rent Regulation No. 28 valid under the Act insofar as it requires the appellants to obtain the consent of the appellee as a prerequisite to the withdrawal of housing accommodations from the rental market?

(d) Is the permanent injunction herein valid under the Act insofar as it enforces any provision of Maximum Rent Regulation No. 28 which requires that the consent of appellee be first obtained before the appellants may recover possession of their property and withdraw same from the rental market?

These questions are not susceptible of direct answers, as they assume inaccurate bases. The principles applying have been adequately treated in Taylor v. Bowles, Em. App., 145 F.2d 833, and in Taylor v. Brown, Em.App., 1943, 137 F.2d 654, in a manner generally contrary to appellants' contentions, and no further comment is needed.

■ We do not consider seriously appellants' use of the words "recovering possession" and "recover possession," which appear in the above questions. See Bowles

v. Willingham, 321 U.S. 503, 517, 64 S.Ct. 641, 648: "* * * We are not dealing here with a situation which involves a 'taking' of property. * * *"

There is nothing in the permanent injunction to prevent appellants' withdrawal of housing accommodations from the rental market. However, as has been pointed out, it is necessary to first obtain an eviction certificate from the Area Rent Director. It will be noted that at the time of the filing of the complaint and the entering of the temporary restraining order, appellants had shown no valid grounds under the Act for evicting or attempting to evict their tenants.

With reference to the contempt proceeding, the District Court found: "* * * In so doing [causing notices to be given to tenants requiring them to vacate] Defendant Taylor was acting in bad faith in that the reasons stated by him in said notices was not the real motive for the giving of said notices. Withdrawal of property from rental is not a ground for eviction of tenants under Maximum Rent Regulation No. 28 unless and until, on petition of the landlord, the Price Administrator issues a certificate authorizing the landlord to pursue his remedies for eviction in accordance with the requirements of the local law. Defendant, Stanley W. Taylor, had not at the time of serving said notice, and has not since, obtained any such certificate and no such certificate has been issued. Defendant has not formally withdrawn any of said notices." "From the foregoing facts, the Court concludes that the giving of said notices constituted an attempt to exclude tenants from possession of housing accommodations in violation of said Temporary Order."

Although the District Court predicated its conclusion on the above finding in part, and although it was subsequently decided by the Emergency Court of Appeals that "bad faith" is not necessarily to be considered when a landlord wishes to withdraw completely from the rental business, still, the violation was effected by the giving of notices to vacate (or the attempt to evict), which was expressly prohibited by the temporary restraining order. Further, although the Emergency Court of Appeals also subsequently ruled that the Acting Area Rent Director should have issued a certificate authorizing the landlord to pursue his remedies in accordance with the local law, since the appellant, Stanley W. Taylor, wished to withdraw completely from the rental business, it will be noted that at the time of giving the notices to vacate, appellant had filed no petition with the Administrator, and, therefore, could not have received a certificate of authorization to proceed as he did. There can be no question but that appellant, Stanley W. Taylor, did violate the temporary restraining order and was, therefore, guilty of contempt.

■ (6) May the appellants or either of them without compensation due or paid to them be lawfully required to leave their respective property in the possession of tenants and to be lawfully compelled to provide to such tenants the services and facilities agreed upon between said tenants and the appellants and at the same time be enjoined from collecting from said tenants either the amount the tenants agreed to pay, or in lieu thereof, just compensation for the facilities and services provided?

This question, say appellants, arises by reason of the fact that appellants and each of them are required by the judgment and order herein to supply facilities and services at rentals wholly inadequate and below average rentals for similar facilities. Appellants contend that in this respect the judgment and order of the court in the permanent injunction violates the Fifth and Thirteenth Amendments to the Constitution of the United States.

The facts of the instant case are practically the same as in Taylor v. United States, 9 Cir., 1944, 142 F.2d 808, in which this court said at page 813: "The claim that the furniture deal between the defendant and Mrs. Flynn transformed the housing accommodations involved in this appeal from furnished to unfurnished facilities is illusory.

"There was no detachment or separation in any way of the furniture or furnishings from the respective apartments by the sale agreement. As far as the appointments in the housing units were concerned, with the exception of the availability for temporary use of an electric washer (and that always revocable at the option of the house management), the situation repecting the tenant was practically identical at all times from March 1, 1942, to the applicable dates in October and November, 1942, when the information charges the violations of the Regulations to have occurred."

■ It will be noted that the additional "laundry service" may be withdrawn at any time, but, clearly, the furniture under the so-called sales agreement cannot be removed (unless, of course, appellants withdraw completely from the rental market under the procedure indicated heretofore); and whatever problems may arise between the appellant-Taylors and Mrs. Flynn under the contract are their own concern. However, looking at the modification of the agreement, it would seem that such problems had been foreseen and provided for. See also Bowles v. Willingham, 321 U.S. 503, at pages 517-518, 64 S.Ct. at page 648: "* * * There is no requirement that the apartments in question be used for purposes which bring them under the Act. Of course, price control, the same as other forms of regulation, may reduce the value of the property regulated. But * * * that does not mean that the regulation is unconstitutional. * * *"

We think the foregoing also answers adequately the appellants' next question, which is as follows: May the appellants, or either of them, be lawfully compelled under one order to supply the respective services and facilities required of each of them, and be enjoined from jointly collecting for such services and facilities more than a specified amount, which said amount being wholly inadequate as compensation for the facilities provided, applies to the appellants jointly, no provision being contained therein by which either of the appellants may determine what each may collect for the services and facilities provided by such respective appellants?

Attention is directed to the District Court's finding (and this supported by ample evidence) that "none of said forty-eight (48) apartments was changed between March 1, 1942, and July 1, 1942, from unfurnished to fully furnished or from fully furnished to unfurnished or by a major capital improvement and no order adjusting the maximum rents for any of said apartments has been made by the Price Administrator."

Appellants' last three questions are as follows: Is the construction placed upon the Act and Maximum Rent Regulation 28 in the judgment valid under the due process and just compensation clause of the Fifth Amendment to the Constitution? Is Maximum Rent Regulation 28 valid (a) under the Act, (b) under the Constitution of the United States? Is the Emergency Price Control Act of 1942 as applied to appellants by Maximum Rent Regulation No. 28 valid under the Fifth and Thirteenth Amendments to the Constitution?[9]

■ In Taylor v. United States, 9 Cir., 1944, 142 F.2d 808, at page 817 the court states as follows: "The constitutional basis of the Emergency Price Control Act of 1942 and Maximum Rent Regulation Number 28, 'born of the exigencies of war,' has been the subject of extensive and comprehensive litigation. The objections raised by appellant to this Act have been recently answered directly or in substance and adversely to appellant's contentions by the United States Supreme Court in Chester Bowles, as Administrator, etc. v. Mrs. Kate C. Willingham et al., [321 U.S. 503], 64 S.Ct. 641, and in Yakus, Petitioner, v. United States, and Rottenberg et al., Petitioners, v. United States [321 U.S. 414], 64 S.Ct. 660. There can be no longer any question as to the constitutional validity of either the Act or of any Regulation under attack in this appeal. Moreover, it should be noted that we are without jurisdiction to pass upon the validity of Rent Regulation Number 28 in view of the provisions of Section 204 of the Act, 50 U.S.C.A.Appendix, § 924." See also Taylor v. Brown, Em.App., 1943, 137 F.2d 654.

■ According to appellants' contention the district court, by its conclusion of law that it has no jurisdiction to consider the validity of Maximum Rent Regulation No. 28 issued by the Price Administrator under the Emergency Price Control Act, 50 U.S.C.A.Appendix § 901 et seq., has made an unlawful surrender of its power to consider the equities involved in and to apply its order to the circumstances of the particular case. The question has been decided adversely by the Supreme Court of the United States. In Lockerty v. Phillips, 1943, 319 U.S. 182, 63 S.Ct. 1019, 87 L.Ed. 1339, the Supreme Court, faced with the question "whether the jurisdiction of the district court below to enjoin the enforcement of price regulations prescribed by the Administrator under the Emergency Price Control Act of 1942, 56 Stat. 23, was validly withdrawn by § 204(d) of the Act" (319 U.S. at page 184, 63 S.Ct. at page 1021, 87 L.Ed. 1339), gave as the answer that:

---

9 The contention of the appellant, Stanley W. Taylor, throughout his brief is that under the Regulation he is being subjected to involuntary servitude.

"In the light of the explicit language of the Constitution and our decisions, it· is plain that Congress has power to provide that the equity jurisdiction to restrain enforcement of the Act, or of regulations promulgated under it, be restricted to the Emergency Court, and, upon review of its decisions, to this Court." 319 U.S. at page 188, 63 S.Ct. at page 1022, 87 L.Ed. 1339.

Insofar as the Thirteenth Amendment is concerned, all of the foregoing, having to do with constitutionality and validity, is equally applicable.

The above treatment of the issues of the main case disposes, as well, of the issues raised in regard to the appeal from the judgment of contempt.

Affirmed.

